Terri L. PEYTON, Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES,
DIVISION OF FAMILY SERVICES,
Respondent.

No. WD 54271.

Missouri Court of Appeals,
Western District.

Feb. 9, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 30, 1999.

Terri Peyton, Liberty, pro se.

Kennard Jones, Government Counsel, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

Terri L. Peyton appeals the circuit court's judgment affirming the decision of Division of Family Services' director that Peyton was not entitled to after-school child care benefits for her son from March 21 through October 15, 1996. Peyton asserts that DFS did not give her notice as required by § 208.080.3,[1] concerning expiration of her child care bene-

---

1. All statutory citations refer to the 1994 Revised Statutes. Section 208.080.3 says, "In the case of a proposed action by the county office of the division of family services to reduce, modify, or discontinue benefits or services to a recipient, the recipient of such benefits or services shall have ten days from the date of the mailing of notice of the proposed action to reduce, modify, or discontinue benefits or services within which to request an appeal to the director of the division of family services. In the notice to the recipient of such proposed action, the county office of the division of family services shall notify the recipient of all his rights of appeal under this section."

fits, and by § 208.080.4,[2] regarding DFS's closing her case. Because §§ 208.080.3 and 208.080.4 have no application to Peyton's case, we affirm the circuit court's judgment.

The evidence established that Peyton had applied for, and received, child care benefits since early 1993. With respect to the benefits at issue here, DFS notified Peyton by letter dated April 13, 1995, that she had been approved for child care benefits for April 13, 1995, through March 21, 1996. DFS sent Peyton a second notice on September 20, 1995, when Peyton changed child care providers for her son. The second notice informed Peyton of her rate change and that she had been approved for child care benefits through March 21, 1996. This second notice also included a provision notifying Peyton of her right to a hearing if she did not agree with DFS's decision. Peyton did not request a hearing.

The state paid Peyton's child care benefits directly to her child care provider until March 21, 1996. On March 21, 1996, the benefits expired because Peyton did not reapply. When Peyton learned from her child care provider in October 1996 that DFS had not paid her child care bill since March 21, she immediately reapplied and started receiving benefits again in October 1996.

Peyton, however, appealed her case to DFS's director claiming that DFS did not give her proper notice regarding the "termination" of her benefits. This lapse, she claimed, entitled her to backpay of the bene-

fits for March 21 through October 15, 1996. The director found that Peyton's appeal was untimely and affirmed the agency's action.

Peyton complains in the first point of her appeal that DFS's notices concerning her eligibility for benefits—sent on April 13, 1995, and on September 20, 1995—did not comply with § 208.080.3. In her second point, she contends that DFS did not comply with the notice requirements of § 208.080.4 before closing her file.[3]

Peyton is clear as to what she is appealing: "The Agency action being appealed in the instant case took place on March 21, 1996, when the Agency discontinued Claimant's benefits[.]"[4]. Peyton's Reply Brief at 6. She claimed a right to appeal the expiration of her benefits pursuant to §§ 208.080.3 and 208.080.4. Hence, we must determine whether the General Assembly intended for a recipient to be able to appeal the expiration of benefits pursuant to §§ 208.080.3 and 208.080.4.

The General Assembly's authorization of an applicant's or recipient's appealing a decision of a DFS county office is limited. Section 208.080.1 restricts the right to appeal to "the following cases:"

(1) If [an applicant's] right to make application for any such benefits or services is denied; or

(2) If [an applicant's] application is disallowed in whole or in part, or is not acted

---

**2.** The statute says, "When a case has been closed or modified and no appeal was requested prior to closing or modification, the recipient shall have ninety days from the date of closing or modification to request an appeal to the director of the division of family services. Each recipient who has not requested an appeal prior to the closing or modification of his case shall be notified at the time of such closing or modification of his right to request an appeal during this ninety-day period. Proper blank forms for requesting an appeal to the director of the division of family services shall be furnished by the county office to any aggrieved applicant. Every such request made in any manner for an appeal to the director of the division of family services shall be transmitted by the county office to the director of the division of family services immediately upon the same being filed with the county office. If an appeal is requested in the ninety-day period subsequent to the closing or modification, benefits

or services shall not be continued at their prior level during the pendency of the appeal."

**3.** Instead of focusing on these issues, the dissent recasts Peyton's appeal and asserts that she is complaining about DFS's modification of her benefits in September 1995, about DFS's failure to give her benefits for an entire year, about not being able to receive benefits for more than a year, about being adversely affected by a determination of a county office of DFS in its administration of programs, and about DFS's rejecting her benefits. We find no such complaints anywhere in this record.

**4.** The dissent agrees that Peyton's right to appeal did not arise from any action by DFS on March 21, 1996. Instead of confining its probe to Peyton's contentions, however, it fabricates an appeal for her.

upon within a reasonable time after it is filed; or

(3) If [DFS proposes] to cancel or modify benefits or services; or

(4) If [a recipient] is adversely affected by any determination of a county office of the division of family services in its administration of the programs administered by it; or

(5) If a determination is made pursuant to subsection 2 of section 208.180 that payment of benefits on behalf of a dependent child shall not be made to the relative with whom he lives.

None of these "cases" apply to Peyton's points on appeal.[5]

█ The primary rule of statutory construction is to ascertain what the General Assembly intended and to give effect to that intent. *Wolff Shoe Company v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). We ascertain that intent primarily by deeming the General Assembly to have intended the plain and ordinary meaning of the words it uses in a statute and by making certain that we comprehend the statute in context.

*Butler v. Mitchell-Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo. banc 1995).

The General Assembly made obvious its intent in §§ 208.080.3 and 208.080.4: to establish basic procedures for the right of appeal it created in § 208.080.1. Its purpose was not to authorize in §§ 208.080.3 and 208.080.4 an independent right to appeal. The reviser of statutes understood this purpose as evidenced by his title, "Appeal to director of the division of family services, when—procedure." The "when" comes in § 208.080.1 where the General Assembly authorizes appeals "in the following cases." The "procedure" comes in the remainder of the statute, including §§ 208.080.3 and 208.080.4. Hence, §§ 208.080.3's and 208.080.4's obvious purposes are to establish procedures, not substantive rights of appeal.[6]

Peyton contends that § 208.080.3 required DFS to give her notice of her right to appeal DFS's proposed action to discontinue her benefits because DFS discontinued her benefits in March 1996. Section 208.080.3, however, is not applicable to Peyton's case. The statute's application is restricted to cases in which DFS proposes to reduce, modify, or discontinue benefits—*see* § 208.080.1(3)—and

---

5. The dissent says that § 208.080.1(3) granted Peyton the right to appeal DFS's modification of her benefits in September 1995, but Peyton is not asserting a right to appeal based on the modification of her benefits pursuant to § 208.080.1(3). The dissent says that, because DFS found Peyton "eligible for benefits ... for approximately three weeks less than one year from the initial determination of benefits, and just 6 months from the date of the September 20, 1995 modification of benefits," slip op. at ——, Peyton had a right to appeal pursuant to § 208.080.1(2) because her application for benefits was disallowed in part. Peyton, however, is not asserting a right to appeal based upon DFS's disallowing her benefits in part pursuant to § 208.080.1(2). Moreover, the record does not indicate that Peyton applied for benefits for a longer period or that DFS disallowed her benefits for a partial period, as the dissent suggests. Peyton's application for benefits was not a part of the record, and, if Peyton wanted this court to consider her application, she—not DFS—bore the responsibility to make sure it was a part of the record. Rule 81.12(c). The dissent also asserts that Peyton had a right to appeal because she was adversely affected by DFS's determination to allow her benefits only for that period, giving her a right of appeal under § 208.080.1(4). Peyton, however, is not asserting a right to appeal based upon

being adversely affected by DFS's determination pursuant to § 208.080.1(4).

6. The dissent expresses doubt that § 208.080.4 is procedural only and that § 208.080.1 provides the only cases which are appealable. It notes that § 208.080.4 provides for 90 days for appeal from an actual modification of benefits even though a right of appeal from any such actual modification is not expressly mentioned in § 208.080.1. The dissent reasons from this that the right to appeal such a modification is implicitly granted by § 208.080.4 itself, even though not set out expressly in § 208.080.1. This is a misreading of the statute. Section 208.080.4 does not say that a closing or modification is appealable. It says, "When a case has been closed or modified and no appeal was requested prior to closing or modification, the recipient shall have ninety days from the date of closing or modification to request an appeal[.]" This merely sets the deadline for a recipient's appeal: 90 days after a case is closed or modified. It does not give the recipient the right to appeal the closing or modification. If, however, a modification results in DFS's disallowing benefits in whole or in part—the likely result in most modifications—the recipient would have a right to appeal pursuant to § 208.080.1(2).

none of this occurred in Peyton's case.[7]

Peyton complained at oral argument that she was confused by DFS's procedures, and DFS's not warning her that her benefits were about to end lulled her to inaction. First, we find no statute or regulation requiring DFS to warn recipients of imminent expiration of benefits. Second, Peyton was not a neophyte to welfare benefits—she had been receiving child care benefits since March 1993 and that at the end of each term she had reapplied for benefits—and she admitted at oral argument that she had never received notice concerning expiration of her benefits. Still, she had managed to reapply for benefits without the notices. She, however, did not reapply for benefits in March 1996; she simply let the benefits expire.[8] Although Peyton contends that DFS discontinued her benefits without notification, DFS took no affirmative steps to discontinue her benefits. The money stopped at the end of the authorized period, and Peyton did not ask for another. Section 208.080.3 simply does not apply to such situations.

Peyton also asserts a right to appeal pursuant to § 208.080.4. She contends that DFS should have given her notice of her right to appeal before closing her case.

Section 208.080.4 does not give the recipient the right to appeal a closing. As we explained earlier, the General Assembly set out in § 208.080.1 a restrictive list of cases in which it authorizes an appeal. Closing a case

is not on this list, and Peyton does not articulate a "case" which is appealable under § 208.080.1.[9]

█ Even if we were to agree, however, that DFS erred in not giving Peyton proper notice, the error did not prejudice her. The notice would have informed her only of a right to appeal, and Peyton's complaint that DFS did not notify her that her benefits were about to expire was not an appealable case pursuant to § 208.080.1. So, even had she received notice, it would not have allowed her to obtain the backpayment she seeks.

Moreover, even if Peyton were correct that DFS erred in not giving her notice, the proper remedy would not be back payment; it would be giving her the appeal which the director denied in part because Peyton asked for it beyond the 90–day deadline. Of course, Peyton does not seek the proper remedy because the proper remedy obviously would do her little good. Her complaint that she did not receive notice of the expiration was not a cognizable claim for an appeal.

The dissent accuses us of denying Peyton a right to appeal by predetermining that the merits of any appeal would be unsuccessful. The dissent's logic fails. We are not assessing Peyton's chances for success on appeal; we merely are saying that Peyton, *based on her own contentions on appeal*, did not present a "case" affording her the right to appeal.[10]

---

7. Of course, DFS *did* notify Peyton of her right to appeal when it modified her benefits on September 20, 1995.

8. Peyton claimed that in the previous years her child care provider reminded her to reapply for benefits. She does not explain, however, why her reliance on her child care provider to give her notice of the expiration of benefits and its failure to do so in a timely matter should make DFS liable for her benefits' expiring.

9. The dissent also suggests that Peyton could have appealed DFS's disallowing some of her claim for benefits and the adverse determination of her claim pursuant to § 208.080.5. Peyton, however, did not assert a right to appeal based upon a rejection of benefits and services pursuant to § 208.080.5, assuming for a moment that it would have been proper to do so. Moreover, the dissent recognizes that Peyton did not comply with the procedures for appeal under

§ 208.080.5. The dissent also says that, because DFS did not submit on the record "Missouri's plan governing benefits" and the federal statutes or regulations limiting the eligibility for benefits to no greater than one-year intervals, Peyton could have appealed the one-year eligibility determination. Peyton, however, is not contending that DFS did anything illegal or improper by setting a date certain for her benefits to expire. In fact, she acknowledges that DFS had done so previously. Moreover, the dissent's focusing entirely on the Missouri "plan" and federal law limiting eligibility of benefits to one year is inconsequential. DFS determined that Peyton was eligible for benefits from April 13, 1995, to March 21, 1996. Her benefits expired on March 21, 1996.

10. The dissent also contradicts itself by predetermining that Peyton would have applied for reinstatement of benefits immediately, making no appeal necessary.

While we are sympathetic to Peyton's plight and are aware of the potential financial hardship this situation places on her, we cannot ignore the law and the General Assembly's mandates. Peyton was obligated to reapply if she wanted future benefits. Although DFS had an internal procedure to notify recipients a month before their benefits expired,[11] nothing in § 208.080 or in DFS's regulations required this notice.[12] Moreover, just as is the case with numerous other benefactors of the state's privileges, the duty was on Peyton to remain alert to the deadline of which DFS had given her clear notice initially.

Peyton would have us shift the responsibility to DFS to assume responsibility for making certain that she really did not want to apply for new benefits. Putting this burden on the state is not lawful or even appropriate. DFS did not allow Peyton's benefits to expire—Peyton did. The obligation to reapply for benefits remained with Peyton.

We affirm the circuit court's judgment affirming the director's decision.

ROBERT G. ULRICH, Judge, PATRICIA BRECKENRIDGE, Chief Judge, JAMES M. SMART, Judge, EDWIN H. SMITH, Judge, and VICTOR HOWARD, Judge, concur.

LAURA DENVIR STITH, Judge, dissents in separate opinion.

HAROLD L. LOWENSTEIN, Judge, JOSEPH M. ELLIS, Judge, ALBERT A. RIEDERER, Judge, and CHARLES SHANGLER, Senior Judge, join in the dissenting opinion.

FOREST W. HANNA, Judge, did not participate.

LAURA DENVIR STITH, Judge, dissenting.

We respectfully dissent from the majority's conclusions that the Division of Family Services (DFS) did not modify, cancel, disallow or otherwise affect Terri L. Peyton's child care benefits and that she did not have the right to appeal the closing of her file. Ms. Peyton appeals the determination of DFS that it was not required to pay after-school child care benefits for her son from March 21, 1996 until October 15, 1996. The Director found that she had received adequate notice in September 1995 that her benefits would expire on March 21, 1996, but that she had failed to timely appeal the decision that her period of eligibility would expire at the end of that time. He also found that Section 208.080.4[1] required her to appeal DFS' decision within 90 days of the date her case was closed by DFS following the expiration of those benefits, and that her appeal, filed in October 1996, was untimely. Accordingly, the Director affirmed DFS' decision to close the file and deny her benefits from March 21, 1996 until October 15, 1996.

Ms. Peyton argues that, in so holding, the Director erred, because she had never received notice before her benefits expired that her benefits were going to expire or that DFS was going to close or had closed her file, and she never received the statutory notice that she had 90 days from closing to appeal DFS' decision as to her benefits. Unlike the majority, for the reasons set out below we find these arguments persuasive, and would reverse and remand with directions that DFS reinstate her benefits for the period from March 21, 1996 through October 15, 1996.

## I. DFS DENIAL OF BENEFITS TO MS. PEYTON AND STATUTES AND PROCEDURES GOVERNING THE RIGHT TO APPEAL DFS ACTION

Terri Peyton had received child care benefits since early 1993. DFS argues that such benefits are normally granted for only either a six month or one-year period. In fact, it

---

11. DFS said that it sent the notice to Peyton, but Peyton testified that she did not receive it. The director found that Peyton's testimony that she had not received this notice was credible.

12. The dissent's position would, in effect, punish DFS for going a step beyond what is required by the law and would likely discourage DFS from sending reminder notices in the future.

1. All statutory references are to RSMo 1994 unless otherwise stated.

suggests a "plan" filed with the federal government and approved by it—but not included in the record here—forbids it from approving eligibility for benefits for longer than one-year intervals. It alleges that this plan also requires DFS case workers to send recipients of benefits a notice 30 days prior to the expiration of benefits telling them that their benefits are about to expire. DFS says that it has incorporated this notice requirement into its policy manual.

Ms. Peyton again applied for benefits and DFS again found her eligible for them in the Spring of 1994. On April 13, 1995, Ms. Peyton again applied for benefits and was found eligible for them from that date until March 21, 1996, that is, for a period which was approximately three weeks short of one year. She thereafter switched child care providers, and told DFS the name of her new provider. On September 20, 1995, she was informed that DFS had approved payments to her new provider through March 21, 1996, although at a different, lesser rate.

Both the April and September 1995 determinations of eligibility stated that, "Based on the information provided on your application for child care services you have been found eligible for the period from 4/13/95 thru 3/21/96." The bottom of the April and September 1995 determination forms also stated:

You may be required by the day care center to pay an additional charge (co-pay) to meet the actual cost of day care services.

*If you do not agree with this decision, you have ninety (90) days to request a hearing at your county office at the Division of Family Services.*

If you wish to have a hearing, you may advise us of this by mail, by telephone or in person. We will then schedule a hearing for you and notify you of the hearing. If you request a hearing, you may present information yourself or you may be represented by an attorney or by other persons who have knowledge of your situation. You have the right to present witnesses in your own behalf and to question persons who appear at the request of the Division of Family Services.

(emphasis added). DFS thus informed Ms. Peyton that she had 90 days to request a hearing on DFS' determinations as to her case. She did not do so at that time.

Ms. Peyton's DFS case worker testified that, at some point after her period of eligibility expired, DFS closed her file. It did not give her notice of the closing or of her right to appeal within 90 days of the closing. In the normal course of events, one would expect that Ms. Peyton would have learned of DFS' action in short order anyway, for her child care provider would have told Ms. Peyton that DFS had quit paying its bills, and the matter would have been sorted out within a month or so. Unfortunately, due to personnel turnover and accounting problems, the child care provider did not realize that it had not been paid by DFS until October 1996, over six months later. It then demanded that Ms. Peyton pay it the $1,426.15 then owing for the period from March 21, 1996 to October 15, 1996.

On October 15, 1996, as soon as she was informed by the child care provider that DFS had not been paying it, Ms. Peyton contacted DFS and learned that DFS had closed her file and quit paying benefits after she failed to reapply for benefits the prior March. She immediately obtained a new application for benefits, which she filed on October 22, 1996. She was again found eligible for benefits. However, DFS refused to pay her child care provider for the care it had provided between March 21, 1996 and the date of her reapplication in October of that year.

Ms. Peyton brought this action to force DFS to pay the $1,436.15 in benefits owing to her provider. She represented herself before the hearing officer, as she did in the circuit court and in this Court. She argued that it was unfair and a violation of due process for DFS to refuse to pay her provider for child care when DFS had not notified her that the benefits were expiring and had not notified her when they did expire or of her right to appeal the closure of her file.

Following a hearing, the Director found that Ms. Peyton had not received the February 1996 notice of expiration of benefits which DFS said it had sent and which its manual required it to send, but that notice is

required only by internal DFS procedures, not by statute or regulation. The Director also found that DFS' determinations of eligibility sent to Ms. Peyton in September 1995 that she was found eligible for benefits from April 13, 1995 to March 21, 1996, constituted adequate notice that her benefits would expire on the latter date under Section 208.080.5. He also found that Ms. Peyton did not timely request review within 90 days of the closure of her file, as required by Section 208.080.4, and held that, as a result, "the Agency's determination to close Claimant's child care case will not be disturb[ed]. The Agency is affirmed."

Ms. Peyton appealed to the circuit court, which also held a hearing. At that hearing Crystal Brown, Ms. Peyton's DFS case worker, specifically testified that DFS closed Ms. Peyton's file once she failed to reapply for benefits after they were terminated on March 21, 1996, stating:

Q. All right, Ms. Brown, please state in detail what actions you would take if you had not received the eligibility documents required in your notice.

A. What eligibility—if you didn't reapply?

Q. Exactly.

A. If you didn't reapply, I wouldn't do anything. I would assume you didn't need day care assistance.

Q. And you would just leave the case file hanging out there or would you do something?

A. We would just put it in our files.

Q. Would the case be closed?

A. Yes.

In addition, when asked about DFS policy to require entry of a redetermination code into the computer if a recipient is determined ineligible, Ms. Brown testified that her office instead followed the policy that if a recipient does not reapply then the local office just does nothing and the state closes the file, and then stated that Ms. Peyton's "case did close and I sent you verification." Finally, Ms. Brown testified that Ms. Peyton's file did not show that she had received any notice that the agency planned to discontinue child care benefits or to close her case; it simply said the beginning and ending dates of eligibility. She was then asked:

Q: Are there any notices in the official record which specifically state my rights to appeal the agency's action discontinuing my child care benefits?

A: I don't think there's anything in there that says that you have 90 days to appeal it.

Q: There are no notices in that file that notify me of my rights to appeal the agency's action discontinuing my benefits?

A: I don't think there's anything in any case file that says that you have so many days.

The circuit court affirmed the Director's decision, and Ms. Peyton now appeals to this Court. We review the decision of the Director, not that of the circuit court. Our review of factual issues is limited to a determination as to whether the decision below is supported by substantial competent evidence on the record as a whole, and as to whether the decision was arbitrary, capricious, or an abuse of discretion. We make an independent determination of legal issues. *Taylor v. Division of Family Serv., Dept. of Soc. Serv.*, 896 S.W.2d 529, 531 (Mo.App.1995); *Southeast Mo. Hosp. Assoc. v. Mo. Dept. of Soc. Serv., Div. of Medical Serv.*, 886 S.W.2d 94 (Mo.App.1994).

## II. FAILURE OF DFS TO GIVE REQUIRED NOTICES

As indicated above, DFS argues on appeal that it gave Ms. Peyton adequate notice of her right to appeal when it told her in April and September 1995 that she had been found eligible for benefits from April 13, 1995 until March 21, 1996. Ms. Peyton argues that these eligibility forms were inadequate because they did not give her notice that her benefits would end if she did not reapply by March 21, 1996. The forms also just mentioned a right to a hearing, not that this was an appeal, indeed, her only appeal of the eligibility period determination.

We do not need to determine the adequacy of these forms, however, because even if the letters of eligibility sent in April and Septem-

ber 1995 constituted adequate notice under Sections 280.080.3 and .5 of her right to appeal the determination that she was only eligible until March 21, 1996 and the determination to change the payee and amount of payments, Ms. Peyton would still be entitled to relief. That is because, even if she missed her initial right to appeal those matters within 90 days of receipt of the DFS letter, DFS was also required to give her notice at the time it closed her file after March 21, 1996, that she had 90 days after it closed her file in which to appeal DFS' adverse actions. We would also find that, to the extent that DFS argues it was required by law to comply with the provisions of a "plan" it had filed with the federal government that DFS says limited it to approval of benefits for one year at a time, it failed to give Ms. Peyton the 30–day notice of expiration of benefits which it admits is also required by that plan.

*A. Right to Appeal Adverse DFS Determinations under Section 208.080.1.*

We must first determine whether the relevant statutes give Ms. Peyton any right to appeal DFS' actions in regard to her benefits. If not, then she would not be entitled to relief in this Court. If so, then we must proceed to determine whether she followed the requisite procedure in filing an appeal.

The basic right of appeal by an applicant for benefits is set out in Section 208.080.1. That section states:

1. Any applicant for or recipient of benefits or services provided by law by the division of family services may appeal to the director of the division of family services from a decision of a county office of the division of family services in any of the following cases:

(1) If his right to make application for any such benefits or services is denied; or

(2) If his application is disallowed in whole or in part, or is not acted upon within a reasonable time after it is filed; or

(3) If it is proposed to cancel or modify benefits or services; or

(4) If he is adversely affected by any determination of a county office of the division of family services in its admin-

istration of the programs administered by it; or

(5) If a determination is made pursuant to subsection 2 of section 208.180 that payment of benefits on behalf of a dependent child shall not be made to the relative with whom he lives.

As the majority notes, subsections (1) and (5) clearly do not apply to Ms. Peyton. We do not agree with the majority's suggestion that Ms. Peyton has no right to appeal under subsections (2), (3), or (4), however. The majority's opinion centers on the expiration of benefits in March 1996, and basically finds that DFS took no action at that time, and thus did not modify, cancel, disallow, or otherwise affect benefits at that time, and thus no right to appeal arose at that time.

We agree that Ms. Peyton's right to appeal the lack of notice did not first arise in March 1996. Rather, it arose earlier, when DFS made its benefits determinations in April and again in September 1995. We disagree with the suggestion of the majority that we are addressing this issue *sua sponte,* however. Ms. Peyton, proceeding *pro se,* clearly argued that DFS erred in letting her benefits expire without adequate notice, and without giving her notice of her right to appeal within 90 days of the closing of her file. While the focus of her argument, as a lay person, was naturally on the day she was affected by DFS' failure to give notice rather than on the date when notice should have been given, she did assert that the April and September 1995 notices were not adequate and the lack of notice of closing was inadequate. We find she adequately raised the issue of notice and closing without notice. *Howard v. Pettus,* 745 S.W.2d 821, 822 (Mo.App.1988) (In determining whether a *pro se* petition states a cause of action, the petition must be viewed favorably to the pleader, given the benefit of every reasonable intendment, and indulged with liberality). Moreover, as discussed infra, DFS itself states that the relevant plan filed with the federal government did require her to receive a notice of expiration of benefits at the time of their expiration also, yet they admittedly failed to do so—a claim the majority admits she raised. We proceed to the merits of the appeal.

In April 1995, DFS told Ms. Peyton she had been found eligible for benefits from April 13, 1995 through March 21, 1996. Ms. Peyton changed child care providers and applied for approval of that change. In a September 20, 1995 determination of eligibility, DFS modified Ms. Peyton's prior benefits by approving the new provider, but at a lesser rate of benefits. The majority recognizes in footnote 7 that this constituted an appealable modification of her benefits. As just quoted, Section 208.080.1(3) expressly states that where benefits are proposed to be modified, a recipient can appeal. If the modification is still in the proposal stage, the recipient has 10 days from the notice of the proposal to file an appeal. § 208.080.3. If no such appeal is filed, then the recipient has 90 days from the date of modification to file an appeal. § 208.080.4.

Moreover, Section 208.080.1(3) is not the only provision of Section 208.080.1 which gave Ms. Peyton the right to appeal the DFS determination of benefits. As noted, both the April and September 1995 DFS determination forms found her eligible for benefits only for the period from April 13, 1995 until March 21, 1996, that is, for approximately three weeks less than one year from the initial determination of benefits, and just 6 months from the date of the September 20, 1995 modification of benefits. Yet, the record nowhere indicates, and DFS does not claim, that Ms. Peyton applied for benefits for only that limited period. Thus, her application for benefits was disallowed in part. Indeed, this would be true even if the maximum period for which one could be allowed benefits were one year, as DFS now claims on appeal, for she was approved initially for three weeks less than one year, and in September 1995 she was approved for only six months. While this may have been proper, it

was a matter which she had a right to appeal under Section 208.080.1(2), quoted *supra,* since her application for benefits was clearly disallowed in part. She was also adversely affected by the determination of DFS to allow her benefits only for that period, and thus had a right of appeal under Section 208.080.1(4), quoted *supra.*[2]

*B. Procedure for Appeal*

A procedure by which Ms. Peyton first could have appealed DFS' disallowance of some of her claim for benefits, and the adverse determination of her claim, is set out in Section 208.080.5, which states in relevant part that:

In the case of a rejection for benefits or services, the aggrieved applicant shall have ninety days from the date of the notice of action in which to request an appeal to the director of the division of family services. In the rejection notice the applicant for benefits or services shall be notified of all of his rights of appeal under this section.

The determinations sent by DFS in April and September 1995 did not cite to this provision expressly, but they did tell Ms. Peyton she was approved for certain benefits for that specific time period, and that if she did not agree with the decision she had 90 days to request a hearing. Clearly, DFS believed its decision was appealable. Indeed, DFS does not argue on appeal that she did not have a right to appeal within 90 days, but rather that she did have that right, and was given adequate notice of it, and that since she did not take advantage of it, her later attempt to appeal when she found out about the closing of her file, was untimely.[3]

We agree with DFS that Ms. Peyton did not timely file an appeal within 90 days of the April or September 1995 determinations, and hence failed to comply with the procedures

---

**2.** While the majority claims she did not raise this issue, she did raise the issue at oral argument that she was not aware of any one year limit on eligibility; she just thought that DFS only committed itself one year at a time since the program was not certain to be available indefinitely.

**3.** To the extent the majority is holding that the provisions of Section 208.080.1 did not even apply to DFS' April and September 1995 determinations, its position is thus contrary to the

position taken by DFS itself, and ignores what in fact occurred. Indeed, if no appeal right then arose, it would mean that the two DFS eligibility determinations informing Ms. Peyton that she had 90 days to appeal the DFS determination of her eligibility were misleading and wrongly informed her of a right of appeal which did not exist. Clearly, the DFS decision was recognized by it to be a disallowance of her application in part, and we have treated it accordingly.

for appeal of the decisions contained in those forms under Section 208.080.5. We disagree that this precluded her from ever appealing DFS' determinations, however. An additional procedure for appeal is set out in Section 208.080.4. It states in relevant part:

> When a case has been closed or modified and no appeal was requested prior to closing or modification, *the recipient shall have ninety days from the date of closing or modification to request an appeal* to the director of the division of family services. Each recipient who has not requested an appeal prior to the closing or modification of his case *shall be notified at the time of such closing or modification of his right to request an appeal during this ninety-day period.* Proper blank forms for requesting an appeal to the director of the division of family services shall be furnished by the county office to any aggrieved applicant.

§ 208.080.4 (emphasis added).[4]

Section 208.080.4 thus gives those recipients who have not previously requested an appeal of a closing or modification of their case the right to request such an appeal within 90 days after the date the case is closed. As set out above, Ms. Peyton's DFS caseworker specifically testified that DFS closed Ms. Peyton's file once she failed to reapply for benefits after they were terminated on March 21, 1996, and conceded on the record that DFS failed to send her notice of her right to appeal at that time. In fact, she was not even told her case had been closed. She had received no communication at all from DFS between the September 1995 determination of benefits and the time she contacted DFS herself on October 15, 1996, once her provider finally told her it had not been paid for six months.

The Director also found, in his decision denying her request for benefits, that DFS had closed her file. He apparently overlooked DFS' failure to send her notice of this closing, however, for he then simply held that he would not disturb the closure decision because Ms. Peyton had failed to appeal it within 90 days, as required by Section 208.080.4. Unfortunately, the Director's decision did not address how Ms. Peyton could have appealed within 90 days of closure of her file when she was notified neither of the closure nor of her right to appeal within that 90-day period.

For the first time at oral argument, counsel for DFS argued that the type of closure given to Ms. Peyton's case was not the type of case closure referred to in Section 208.080.4. Nothing in this record supports this assertion, however. To the contrary, as already noted, the Director specifically cited Section 208.080.4 and its provisions regarding the right of a recipient to appeal closure of a file in ruling that, "as Claimant did not timely request review of the Agency's action the Agency's determination to close Claimant's child care case will not be disturb[ed]." (emphasis added). Thus, whether or not DFS usually closes a file in other cases of expiration of eligibility, it did so here.[5] Having relied on the application of the closure

---

4. The majority holds that this section is procedural only, and does not provide a recipient of benefits with any additional right to appeal not otherwise granted under Section 208.080.1. We do not think this is necessarily the case. Section 208.080.1(3), for instance, expressly addresses only a proposal to cancel or modify benefits or services, not actual cancellation of them. Section 208.080.3 provides 10 days to appeal from such a proposed cancellation. However, Section 208.080.4 provides for 90 days for appeal from an actual modification of benefits, even though a right of appeal from any such actual modification is not expressly mentioned in Section 208.080.1. The right to appeal such a modification is thus implicitly granted by Section 208.080.4 itself, even though not set out expressly in Section 208.080.1. By the same token, it would seem that the right to appeal closing of a case is implicitly granted by Section 208.080.4 also, without regard to whether that right is also

set out in Section 208.080.1. We need not determine this issue, however, since, as just discussed, we feel Ms. Peyton does have the right to appeal under Section 208.080.1, even were such a right not also granted under Section 208.080.4.

5. We do not suggest that, in another case, DFS could not make a record that there is more than one type of closure, and that the closure discussed below was not the type of closure referred to by Section 208.080.4. We would simply hold that there is nothing in this record so providing, and, absent such a record, we will not read a distinction into the statute which is not evident on its face. Moreover, even if, in the usual case, DFS does not automatically close a case once benefits have expired, the only record in this case shows that is what it did here. We would thus decide accordingly.

provisions when DFS believed it was to its benefit to do so, we would hold that DFS cannot now claim, for the first time on appeal and without record support in this case, that the file was not really closed because the closure referred to by DFS and the Director is not the type of closure mentioned in the statute. Nothing in this record or in the language of the statute supports this distinction.

## C. Efficacy of Allowing an Appeal

The majority holds that, even if Ms. Peyton were not given proper notice of her right to appeal, she was not prejudiced by that lack of notice, since she had no basis on which she could have won an appeal in any event since, according to DFS, by law DFS was precluded from finding her eligible for more than one year at a time anyway. We are unaware of any precedent authorizing a court to hold that denial of the right to appeal was not prejudicial based on the court's predetermination—and without briefing addressed to the merits of the issues to be raised—as to whether the appeal would have been successful. Due process demands that the right to appeal be given where permitted by law; the right does not depend on whether the court thinks there is a high probability of success.

Moreover, even on the limited record before us, we disagree that Ms. Peyton had no chance of success on appeal and thus was not prejudiced by denial of her right to appeal. The contrary argument seems to be premised on the assertion made by DFS that it had no right to approve eligibility for benefits for more than a one-year period. First, DFS did not approve benefits for Ms. Peyton for one year. It approved them from April 13, 1995 to the following March 21, a period which on its face is less than one year in length. It modified and reapproved them in September 1995 for the remaining six months. DFS has cited no statute or regulation which precluded it from initially granting a full year of benefits, or from granting another full year's approval in September 1995. These were matters which Ms. Peyton could have raised on appeal, and they may have been successful.

Second, DFS has not cited us to a statute or validly enacted regulation providing that it is limited to approving benefits for a one-year period at a time. Apparently, DFS' authority for the asserted one-year limitation on benefits is its own practice of granting benefits for only a six-month or one year period at a time. Presumably, that practice is set out in its internal policy manual, although no copy of that portion of its policy manual is included in the record. Even were it properly before us, however, a policy which affects the benefits to which a recipient is entitled is a Rule, and must be based on statute or validly enacted regulation. It cannot be contained in an internal manual not properly enacted or published. *See Tonnar v. Mo. State Highway & Transp. Comm'n.*, 640 S.W.2d 527, 530–32 (Mo.App.1982) (court could not give force and effect of law to agency manual provision, since they were not promulgated as required for agency rules). It is thus not at all clear that Ms. Peyton would not have been successful in attacking the expiration of her benefits in March 1996.

## D. Compliance with Missouri' s "Plan" Governing Benefits

DFS counsel did suggest for the first time during *en banc* reargument that DFS' one-year limitation on determination of eligibility for benefits is required by federal law. More specifically, counsel argued that we cannot hold that Ms. Peyton had a right to appeal the DFS determination to pay her benefits for only one year because Missouri has filed a "plan" with the federal government which controls how and under what procedures the child care benefits she receives are to be paid, that Missouri is required by federal law to follow this plan, and that the plan requires a redetermination of eligibility at no greater than one-year intervals. Thus, counsel argued, Ms. Peyton could not have been successful even had she appealed the one-year eligibility determination. When her benefits expired, they thus simply ended by their inherent nature. This may also be a basis of the majority's holding that she could not appeal because one cannot appeal the end of a benefit when the benefit ends of its own force, and not by Agency action.

The premise of DFS' argument is mistaken on multiple grounds. First, as just noted, Ms. Peyton was not determined to be eligible for benefits for one year, but rather from April 13, 1995 through March 21, 1996, and then later from September 20, 1995 until March 21, 1996. Thus, even under DFS' argument, she could appeal as wrongful the denial of additional eligibility.

Equally basically, just as DFS has cited us to no Missouri statute or regulation containing a one-year limitation on eligibility determinations, it has neither given us a copy of the alleged plan nor provided us with any citation to federal law requiring us to follow such a plan, sight unseen. In fact, no reference to the existence of such a plan was even made until reargument of the case *en banc.* No explanation is made as to the basis on which this plan's alleged one-year limit should be given the force and effect of Missouri law if it was not adopted by Missouri statute or adopted by DFS as a Rule and published in the appropriate Code of State Regulations. In fact, it is not even in the record in this case, nor is there any evidence in the record as to when this limitation applies or as to any exceptions thereto.

We are convinced of the sincerity of counsel's argument that such a plan exists and that he has accurately described his understanding of it. From our own research, we presume that the plan referred to is one of those drawn up by the State of Missouri in compliance with the requirements of one of the United States Department of Health and Human Services Childcare Programs described in such regulations as 45 C.F.R. §§ 98–99, 255, 256 or 257. *See also* 13 Mo. C.S.R. 40–32.010. The content of these plans is not included in the published regulations, however, and we do not even know which of these plans is being invoked, much less can we examine the content of the plan in question. We are doubtful that our decision in this case can legally be based on the terms of a plan not included in the record, or based on the requirements of statutes or regulations not cited or discussed in the parties' briefs and argument. *See Tonnar,* 640 S.W.2d at 530–32.[6]

Even if we were to assume, as DFS requests, that the plan is as DFS counsel described, that it does contain a general one-year limitation on eligibility determinations, and that it is controlling here, however, Ms. Peyton is still entitled to relief. DFS states that the provisions of this plan regarding yearly redeterminations of eligibility have been incorporated into DFS' internal policy manual. It also concedes, however, that among the plan provisions so incorporated is one requiring DFS to notify recipients 30 days before the expiration of their benefits that they need to have a redetermination of eligibility made or their benefits will expire.

DFS admits that, under this portion of the plan, which it says is equally as binding as is the one-year limit on eligibility determinations, it was required to notify Ms. Peyton 30 days before expiration of her benefits that the benefits were going to expire. This portion of the policy manual was included in the record. It provides:

5. Redeterminations

Notify the client at least 30 days prior to eligibility end dates to redetermine a need for services. No notice is automatically generated. Manual controls must be in place to track eligibility periods. Redetermine eligibility prior to the last day of current eligibility period to prevent any lapse in service. If child care was previously approved based on a need that has a maximum time limit (for example, college is limited to 4 years), and at redetermination, client has reached the maximum or if

---

**6.** Of course, it may be that DFS would have provided evidence of proper promulgation, or of other bases to make the plan binding, had an appeal been filed, or that it would do so in another case. It may be, however, that the plan does not cover this situation, or has exceptions for it, or that it is not binding on us or that DFS was required to promulgate a rule in order to adopt it and has failed to do so. Without a copy of the plan and more information about it, we just do not know. What we do know is that, on this record, there is no basis for the majority to determine whether or not an appeal would have been successful, or that DFS' determination to limit her benefits to the period from April 13, 1995 to March 21, 1996 was not adverse to her, or that it did not deny her benefits to which she may have been entitled, or that its notice to her was adequate.

a client has completed a JOBS component or his/her 12 months of transitional child care are expiring, determine if client is eligible under a different program based on a different need.

At oral argument, DFS further admitted that, if it did not comply with this 30–day notice requirement, then the proper remedy would be to reinstate Ms. Peyton's benefits. Counsel claimed, however, that DFS fulfilled this notice requirement because it alleges that it sent such a notice to her in February 1996, even though the Director found she did not receive the notice. We reject the latter argument. The manual does not say that the case worker is to send a letter, without regard to whether it was received—such a provision would not serve the purpose of the notice, in any event. The manual says that the case worker is to notify the client of the nearing expiration of benefits *so the client can reapply before expiration of benefits occurs.* If the client did not get the notice, the purpose of the statute would not be served. Since it is admitted that Ms. Peyton did not receive the notice, she thus was not notified of the expiration of her benefits as the statute required. DFS has admitted that the appropriate remedy for this error is backdating of her benefit eligibility to March 21, 1996.

In sum, for the reasons stated earlier, we would find that DFS did close Ms. Peyton's case and that it failed to give her notice that it was doing so and that she had 90 days to appeal pursuant to Section 208.080.4. We would also find that it failed to notify her 30 days before the expiration of her benefits, as required by its manual and as DFS says is mandated by the "plan" Missouri filed with the federal government. These failures in notice would entitle her to reinstatement of her benefits by backdating her eligibility for them to March 21, 1996. In fact, any other ruling would give DFS a benefit for its failure to give her proper notice, for without regard to whether she would have won her appeal, she would have immediately learned from the notice of expiration of her benefits, *or from the notice of closure,* that her benefits were ending. She could have immediately applied for reinstatement of them, or for a new determination of eligibility, pending resolution of her appeal.

For these reasons, we would reverse the Director's affirmance of the denial of benefits and remand to the circuit court with directions that it require DFS to backdate Ms. Peyton's eligibility for benefits to March 21, 1996 and pay Ms. Peyton's child care provider the $1,436.15 in benefits which are at issue in this case.