PSYCHIATRIC HEALTHCARE COR-
PORATION OF MO d/b/a Lakeland
Regional Hospital, Appellant,

v.

DEPARTMENT OF SOCIAL SER-
VICES, DIVISION OF MEDICAL
SERVICES, Respondent.

No. WD 56279.

Missouri Court of Appeals,
Western District.

May 25, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 29, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Richard Watters, Esq., St. Louis, attorney for Appellant.

Jeanine Hazelton, Esq., Jefferson City, attorney for Respondent.

Before: Presiding Judge JOSEPH ELLIS, Judge HAROLD LOWENSTEIN and Judge VICTOR HOWARD.

LOWENSTEIN, Judge.

This case emanated from an action before the Administrative Hearing Commission (hereafter AHC). The agency action is reviewed pursuant to Section 536.140, RSMo 1994.[1] An overview of the procedural history of this appeal will now follow.

1. All further statutory references are to the Revised Statutes of Missouri 1994 unless otherwise indicated.

Psychiatric Healthcare Corporation (hereafter Psychiatric), doing business as Lakeland Regional Hospital, filed a Complaint with the AHC when the Missouri Department of Social Services, Division of Medical Services (hereafter Department) reached a decision to deny Psychiatric's request for a credit of over $838,000 for services it rendered for charity patients. The Department certified Psychiatric to provide Medicaid services in this state. The Department raised the issue of whether the AHC had subject matter jurisdiction to hear the matter. The Department argued that Psychiatric's complaint about the credit was untimely filed under § 208.156.8, RSMo 1994, which allows the provider thirty days from mailing or delivery of a decision of the Department, to file for review with the AHC. The AHC ruled against the Department's motion to dismiss, concluding that Psychiatric's petition was timely filed and that AHC had jurisdiction to hear the case. After a hearing on the merits, AHC found in favor of Department. Under § 536.110, Psychiatric filed a petition for judicial review in Cole County Circuit Court. Department filed a cross-petition in circuit court, again raising the issue that the AHC lacked subject matter jurisdiction because Psychiatric's complaint with the AHC was not timely filed. The trial court ruled the AHC lacked subject matter jurisdiction because Psychiatric was indeed late in filing with the AHC, and dismissed Psychiatric's petition for review. Psychiatric has appealed to this court. However, under Rule 84.05(e), where a circuit court reverses a decision of an agency, and appellate court reviews the agency decision, rather than that of the circuit court, then "... the party aggrieved by the agency decision shall file the appellant's brief...." Therefore, since the AHC ruled against the Department on the question of subject matter jurisdiction, the Department is the appellant in this court.

■ This court's review is of the AHC decision, and is limited to whether that decision was supported by competent and substantial evidence on the whole record, or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of jurisdiction. *Black v. Lombardi,* 970 S.W.2d 378 (Mo.App.1998). Decisions of the agency based on interpretations of law are for the independent judgment of the reviewing court. *Golde's Department Stores, Inc., v. Director of Revenue,* 791 S.W.2d 478, 480 (Mo.App.1990).

The threshold issue for the decision is whether Psychiatric timely filed for review of the adverse agency determination on the amount of charity allowances it could take for reimbursement from the state.

## THE JURISDICTIONAL ISSUE

■ Psychiatric is a corporation that, via Lakeland Regional Hospital, provides psychiatric services through Medicaid in Springfield Missouri, subject to regulations for reimbursement from the Department. In 1993, Psychiatric provided $838,962 in services to clients who had no insurance or resources. There is no question that § 208.156.8 controls, and that Psychiatric had thirty days from the date of mailing or delivery of a *decision* of the Department to file for review. The following events pertinent to the issue of timely filing of an appeal from the agency decision are now set out:

April 1994: Psychiatric filed its 1993 report with the Department and sought credit for "charity care" in the amount of $1,976,922. Psychiatric did not provide sufficient documentation (trial balance pages) to support this request. In that same month it received the desk review report prepared by the Department, which allowed $0 for "charity care" to Psychiatric.

May 1995: Psychiatric received a confirmation schedule from the Department of the desk review. This confirmation showed $0 in "charity care." The chief financial officer of Psychiatric signed the confirmation scheduled. No changes were suggested by Psychiatric.

December 7, 1995: Department advised Psychiatric that Department had filed new regulations which would increase the allowance it would pay for patient days based on the 1993 cost report. Schedules were attached with a new computation by Psychiatric, but still showing "charity" in 1993 of $0, and bad debts of $1,730,949, resulting in a "revised assessment." This letter ended with the following sentence: "If you have any question, please feel free to contact ... even if you intend to exercise your right to appeal the matter to the Administrative Hearing Commission."

December 20, 1995: Psychiatric sent a letter to Department requesting a correction on the adjustment contained in the Department's previous letter. Psychiatric said it noted the 1993 allowance was zero, but that Psychiatric's actual charity charges for 1993 were $838,962. Psychiatric attached a schedule of its expenses, and requested reconsideration, and ended: "Your letter mentioned the Missouri Statute, § 208.156 RSMo, that may provide an appeal avenue should this written request not be granted. If you are unable to grant our request visa this letter and an appeal is necessary, please forward a copy of the appeal procedures...."

January 4, 1996: Department sent a response apparently saying that since Psychiatric had not corrected the confirmation schedule (May 1995) within fifteen days, the Department "will not adjust" the adjustments made in its letter of December 7th. The letter ended with the phone number Psychiatric could contact about taking an appeal.

January 20, 1996: Psychiatric filed a complaint with the AHC.

The Department filed an answer, and by motion asked the AHC to dismiss the complaint for lack of subject matter jurisdiction since the December 7, 1995 letter it had written informed Psychiatric of the adjustments, rendering the January 30th complaint in the AHC out of time to meet the thirty day requirement. Department relied upon two cases: *Springfield Park Central Hospital v. Director of Revenue,* 643 S.W.2d 599, 600 (Mo.1983), which holds that an untimely filing of a petition after final agency decision renders the AHC without jurisdiction to entertain the petition and must enter an order of dismissal; and *Fayette No. 1 Inc., v. Missouri Department of Social Services,* 853 S.W.2d 393, 397 (Mo.App.1993), that holds if the AHC did not acquire subject matter jurisdiction, then neither did the court.

In deciding if it had jurisdiction, the AHC concluded the Department's letter in December was a decision, and indeed the second letter on January 4th "also decided the matter." It cited the plain language of both letters to negate that the first letter was final: "Neither letter manifests any more or less 'finality' than the other, especially the equivocal language on appeal rights ..." as contained in the first letter. It also noted that portions of Department's answer characterize the first letter as a "proposed decision" with Psychiatric retaining the right to administrative review of the second letter. The AHC ruled that the January 4 letter of the Department started the thirty-day clock running for the appeal of Department's decision. Once past that hurdle, the AHC ruled on the merits of Psychiatric's appeal, and found in favor of the Department.

The circuit court, after adopting the findings of the AHC on the merits, ruled the AHC and the court never had jurisdiction because the December 7th letter gave the decision of the Department, leaving the January 30th appeal to the AHC well out of time. In reversing the AHC on the issue of jurisdiction, the court's Order stated the January 4th letter was not a decision, "because it did not set or change the amount of the payment previously determined by the Department in its December 7, 1995 letter and attachments thereto."

This court believes the AHC correctly answered the issue of when the clock be-

gan to run for the purposes of contesting the Department decision. The language of the earlier December letter left the provider with the thought that the issue of rate determination was still a live issue, and that a different ruling could be obtained if Psychiatric finally provided the necessary backup. The Department's contention here that Psychiatric, as far back as 1994 and 1995, could see that the Department was not going to grant credit for the claimed "charity amount," does not carry the day on the issue of jurisdiction. It was in the hands of the regulator, the Department, to make the final decision as to a charity adjustment. Indeed, Psychiatric should have seen the handwriting on the wall as to its "charity claim," but the language in the December letter it received showed the computations were newly revised based on a change in federal regulations as of November 1995. The January letter brought finality to the matter by saying it rejected Psychiatric's suggested corrections to the December figures, and that the Department "will not adjust" the compensation rate. Determining finality of an agency decision should not be a matter of conjecture or speculation by a regulated party. The second letter from the Department sounds like a final decision, and the Department is bound thereby. In the interest of hearing cases on their merits and deciding them on the merits, in these circumstances the ruling of the AHC on the motion to dismiss will be affirmed. *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338, 341 (Mo. banc 1991). This decision is not at odds with the court's recent en banc case of *Peyton v. Department of Social Services, Division of Family Services*, 987 S.W.2d 427 (Mo. App. 1999, Stith dissenting). The facts here are inapposite since the agency in *Peyton* sent a clear message in its communications, whereas here, there were indeed two decisions both purporting to be final decisions. The majority's language in *Peyton* still holds true, the duty to remain alert to the deadline communicated by the agency, was still on the party affected. (Slip opinion at page 430).

## APPEAL ON THE MERITS

■ Having determined that the AHC and the courts have jurisdiction over this appeal, a determination must be made as to whether the Psychiatric appeal should be returned to the circuit court for a decision. By law, the circuit court is to initially review the AHC decision. Also, by law, this court's review is of AHC's decision, not the judgment of the circuit court. *Psychare Management, Inc. v. Department of Social Services, Division of Medical Services*, 980 S.W.2d 311, 312 (Mo. banc 1998). The circuit court, while specifically adopting the findings of the AHC, did not rule on the merits of Psychiatric's appeal. One option would be to return the cause to the circuit court for a ruling, but since the trial court's review is the same as this court's under § 536.140, and since the only determination to be made is the legal conclusion reached under the facts of this case (there being no dispute as to the facts), this court opts, in the interest of judicial economy and to expedite this matter, to rule on the appeal. *Foremost–McKesson v. Davis*, 488 S.W.2d 193, 196 (Mo. banc 1972).

■ The facts pertinent to the jurisdictional question, generally apply to the merits of the action. However, a favorable ruling by the AHC on the timely filing of the appeal does not mandate a similar result for Psychiatric's appeal on the merits. The December 1995 and January 1996 letters from the Department seemed to leave the door open for Psychiatric to buttress, or justify the figures it wanted adopted for its "charity care" during 1993. The Department was not obligated, nor was the AHC, or a reviewing court, to later accept Psychiatric's belated efforts to supply the backup data long ago requested by the Department. The undisputed facts as found by the AHC showed: 1) in 1993 Psychiatric provided $838,962 in services to clients who could not pay; 2) Psychiatric is a provider which was reimbursed by Medicaid as an institution that provided a disproportionate share of unreimbursed care under the Federal Reimbursement

Plan; 3) in April 1994, Psychiatric filed with the Department a worksheet claiming $1,976,922 for charity, but failed to provide trial balance pages for charity; 4) in April 1994, Department performed a desk review of the 1993 report, and noting the lack of documentation wrote to Psychiatric that month rejecting the proposed charity figure, then in May 1995, Department sent a confirmation schedule to Psychiatric showing $0 for charity care, and the chief financial officer of Psychiatric signed the schedule but made no corrections; 5) by way of a letter Department sent to Psychiatric in August 1995, Psychiatric was advised of several revisions to the rules regarding the treatment of uninsured costs, with the most recent revision which allowed a return of a percentage of uninsured expenses of providers, using 1993 as the base period; 6) the December 6, 1995 letter Department sent to Psychiatric allowed an uninsured add-on of $1,235,548 based on the 1993 bad debts of Psychiatric, but still showed $0 for "charity care," and Psychiatric signed this schedule without making corrections; 7) the December 20 letter from Psychiatric submitted further information to "correct" its adjustment by adding the allowed percentage to a 1993 "charity care" amount of $838,962. The January 4, 1996 Department response was that it would not agree to the "charity" adjustment.

The AHC further found Psychiatric had $838,962 worth of "charity" expense for the year 1993. In 1994, Psychiatric had listed over $1.9 million for "charity cases." (The lower figure as found by the AHC would, under the percentage formula applicable, have amounted to just under $600,000.)

Based on the facts, the AHC concluded that under the existing law, the Federal Reimbursement Allowance, § 208.453–.480, and the then applicable regulations, 13 CSR 70–15.010 and .110, the burden and duty was on Psychiatric to respond to the charity figure sent to it in the confirmation schedule, and when it failed to respond within fifteen days to correct the figure, or to send in such records or backup data to

the Department to justify a corrected figure, then the Department was free to keep the figure at zero despite the much belated attempts of the provider to provide justification. Psychiatric argued that 13 CSR 70–15.110, which specifically stated the duty of the provider was to make corrections within fifteen days, did not specifically mention the "charity" deduction, therefore it was immune from the requirement that each hospital had fifteen days from the receipt of incorrect information to provide the Department with the correct information. The AHC ruled: "The Department clearly needs the information on charity care to determine total unreimbursed care." Psychiatric argued that at the time of receipt of the incorrect charity figure, it did not think the matter was important, but due to later developments; i.e., the later change in the law and regulations which made the 1993 period a base period for calculation of future reimbursements, it suddenly realized the importance of the 1993 figures, and believed they should be granted the opportunity to set the facts straight. The AHC said, and this court agrees:

Regardless of whether the information in question was important to Psychiatric, it was information that the Department had a legal right to get and should have a right to rely on in future calculations. While it is true that Psychiatric did not know that this report might be used later as a result of a new law, this in no way gives Psychiatric a right to pick and choose which information to confirm with accuracy. Psychiatric had two opportunities to convey the correct information, and a duty to correctly reply to any of the Department's requests for 1993 information.

The AHC also concluded later changes in the regulations did nothing to alter the duty of the provider hospital to correct figures it thought the Department had used in error, because the Department "should be able to depend on the accuracy of the reports ... and should be able to use those reports for its calculations, even if the importance of those calculations re-

sults from the passage of a new law." The Commission is correct, Psychiatric did not respond to the April 1994, nor the May 1995, figures. The Department was not duty bound to accept corrected figures in December 1995, and to recalculate a new allowance. Section 208.457 requires providers to keep records necessary to determine the amount of its allowance, and to provide the Department such records that accurately reflects its total of unreimbursed care.

Because of the inordinate delay of the provider after having submitted an undocumented figure of over $1.2 million, and having failed to complain and or correct the agency determination of zero and even going so far as to sign off on the incorrect figure rather than timely put forth its correct figure of approximately $839,000, the provider was not in a position to require the agency to overlook the fifteen day requirement of the regulations and later accept the new figures. *Monroe County Nursing Home Dist. v. Department of Social Services,* 884 S.W.2d 291, 293 (Mo. App.1994).

Under *Geriatric Nursing Facility, Inc., v. Department of Social Services,* 693 S.W.2d 206, 209 (Mo.App.1985), this court reviews on the evidence submitted and the administrative decision of the agency as announced by the AHC decision. On the basis of the review of this decision, and under the scope of review, this court cannot say the AHC was mistaken in its application of law in determining that even though Psychiatric did render substantial charity care in 1993 the Department was, under the facts here, not obligated to accept Psychiatric's figures.

The judgment of the circuit court is reversed and remanded with directions to enter a judgment in accordance with the decision of the AHC.

All concur.